ELIZABETH BOWN *v.* WATERBURY BATTERY COMPANY ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued April 9—decided May 8, 1942.

*James M. Lynch,* with whom was *Harry Krasow,* for the plaintiff.

*Arthur B. O'Keefe,* for the defendants.

BROWN, J. The Waterbury Battery Company, hereinafter called the defendant, is engaged in the business of manufacturing batteries in Waterbury, and prior to a fire in February, 1941, manufactured primary batteries at its place of business on South Main Street and storage batteries at its other place of business on Mill Street. As a result of the fire at the former plant it became necessary to remove some of the operations in connection with the manufacture of primary batteries to the Mill Street plant. This required the erection of a partition to divide the single room there available, to prevent the damage by fumes and dirt to the materials used in making the primary batteries which would result if the storage batteries were manufactured in the same room. The defendant awarded the job of repairing the burned roof of the South Main Street plant to Walter J. Martin, who was owner of a roofing business and had in his employ George Bown, a roofer by trade. The defendant also engaged Martin to erect of light unsubstantial material known as cello-

glass the needed partition at its Mill Street plant extending the entire length of the fifty-foot room and from floor to ceiling, a height of twelve feet. On February 17, 1941, Bown as Martin's employee, while engaged in the erection of this partition, was working on a platform about six feet high when a plank gave way, precipitating him to the floor and causing injuries which resulted in his death on February 26, 1941. The plaintiff is his widow and sole dependent. The agreement between the defendant and Martin was that he was to do the work on the basis of the cost of labor and material furnished by him plus 10 per cent. In fact, most of the material was provided by the defendant. In addition to these facts, which are not disputed, the commissioner found that the erection of the partition to enable the defendant to continue the manufacture of both types of batteries without interruption "was an essential and necessary condition in the operation and continuance of its trade or business." He further found the defendant liable as Bown's employer under § 5230 of the General Statutes and awarded compensation to the plaintiff for his death. Upon the defendant's appeal from this award the Superior Court reserved the case for the opinion of this court.

The question for determination is whether the defendant was liable as a principal employer within the meaning of § 5230, which is printed below.[1] To render

---

[1] Sec. 5230. PRINCIPAL EMPLOYER, CONTRACTOR AND SUBCONTRACTOR. When any principal employer shall procure any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done shall be a part or process in the trade or business of such principal employer, and shall be performed in, on or about premises under his control, then such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor.

him liable under its provisions "(1) the relation of principal employer and contractor must exist in work wholly or in part for the former; (2) the work must be on or about premises controlled by the principal employer; and (3) the work must be a part or process in the trade or business of the principal employer. *Crane* v. *Peach Brothers,* 106 Conn. 110, 113, 137 Atl. 15; *Fox* v. *Fafnir Bearing Co.,* 107 Conn. 189, 191, 139 Atl. 778; *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 136, 157 Atl. 860; *Massolini* v. *Driscoll,* 114 Conn. 546, 551, 159 Atl. 480; *Hoard* v. *Sears Roebuck & Co., Inc.,* 122 Conn. 185, 188, 188 Atl. 269." *Buytkus* v. *Second National Bank,* 127 Conn. 316, 319, 16 Atl. (2d) 579. It is conceded that conditions (1) and (2) were fully met so that the determinative question upon this reservation is whether the work of erecting the partition was "a part or process in the trade or business" of the defendant. The plaintiff contends that, the commissioner having expressly found as a fact that its erection "was an essential and necessary condition in the operation . . . of its [the defendant's] trade or business" and none of the evidence being printed in the record, this finding is not subject to correction and is conclusive that the deceased was an employee of the defendant under § 5230. This is not a finding of a subordinate fact, however, but is a conclusion of fact. Accordingly, even though as worded it were sufficient to establish condition (3) above, it cannot stand unless the subordinate facts found reasonably and logically support it. Conn. App. Proc., § 96; *Hackett* v. *New Haven,* 103 Conn. 157, 164, 130 Atl. 121; *City Bank & Trust Co.* v. *Ruthinian Greek Catholic Church,* 102 Conn. 609, 611, 129 Atl. 785; *Nolan* v. *New York, N. H. & H. R. Co.,* 70 Conn. 159, 174, 39 Atl. 115. The vital question therefore remains for determination upon the facts above recited.

The plaintiff relies upon four decisions by this court as supporting her contention that the erection of the partition was a part or process in the trade or business of the defendant. Of these the two cases more closely analogous to the one before us, in so far as the nature of the work performed by the employee when injured is concerned, are *Carlson* v. *Miller,* 118 Conn. 367, 172 Atl. 872, and *Levecque* v. *Dupuis,* 119 Conn. 224, 175 Atl. 782. In the former the plaintiff was injured by a saw which he was using to cut lumber in erecting a stand for the display of goods in the market of the defendant where he was employed; and in the latter the plaintiff was injured by the breaking of a ladder which he was using in repairing the roof of the defendant church by which he was employed. While the plaintiff was held entitled to compensation in each of these cases, neither is authority which can sustain the plaintiff's claim here. The plaintiff in each case was the defendant's own employee, there being no independent contractor, so that the case turned not on the construction of § 5230 but on that part of § 5223 which denies compensation to a casual employee unless he is injured while employed "for the purposes of the employer's trade or business." The difference between the language of this provision and that of the clause "a part or process in the trade or business" contained in § 5230 is significant (*Carlson* v. *Miller,* supra, 371), and these cases are "of assistance only through a none-too-close analogy." *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* supra, 137. "Work not 'a part or process' of the employer's business within the meaning of § 5230 may nevertheless be strictly 'for the purposes of the business' within the meaning of § 5223. . . . by this difference in language, the legislature intended to give to a principal's own employees a broader claim

upon him than was felt the employees of a contractor should have." *Levecque* v. *Dupuis,* supra, 229.

The other two cases relied upon by the plaintiff held the employee entitled to compensation under § 5230, but are distinguishable from the instant case because of the different nature of the work which he was doing when injured. Thus in *Hoard* v. *Sears Roebuck & Co., Inc.,* supra, the plaintiff was hurt while engaged in clearing away rubbish from the yard in the rear of the defendant's store as called for by the contract of the plaintiff's immediate employer with the defendant; and in *Fox* v. *Fafnir Bearing Co.,* supra, the plaintiff was injured while washing windows in the defendant's factory pursuant to the contract of his immediate employer with the defendant. In neither of these cases was the work which the plaintiff was doing a "process in the trade or business" of the defendant. It was rather work necessary to maintain the defendant's premises in suitable condition for conducting its trade or business, and in this sense "part" thereof within the statute. As we said in the *Fox* case at page 195: "Such work is customarily done by regular employees in the daily routine of their duties in the factory. It is clearly distinguishable from work done in connection with the repair or alteration of the factory buildings." See also *Carlson* v. *Miller,* supra, 370. Upon the facts before us none of the cases relied upon constitute authority establishing the plaintiff's right to compensation.

The case of *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* supra, is, as the defendant claims, most nearly analogous to the one before us. In that case the plaintiff, a painter, whose employer had contracted with the defendant to paint its buildings then in the course of construction, was injured by shock from an electric power wire which he contacted in the course of his work. We held that the construction of the

buildings was not "a part or process in the trade or business" of the defendant and that therefore it was not liable to the plaintiff under § 5230. The commissioner in his memorandum distinguished this case on the ground that in it the plaintiff's work was being done on a new building in which the defendant had not yet begun to carry on its business of manufacturing, while in the instant case before the erection of the partition began the defendant was already engaged in manufacturing batteries in the Mill Street plant. The finding shows, however, that the only batteries which the defendant had manufactured there were storage batteries and that it could not manufacture primary batteries in the same room with storage batteries. To provide the separate room essential to this operation the partition was being built. Its erection was in effect therefore just as much a new addition to the defendant's plant as would have been the construction of an extension of the building to provide the separate room needed. When completed it was to afford the required exclusive facilities for the manufacture of the two distinct types of batteries and would serve the same purpose which the two separate buildings used by the defendant had served before the fire. Since the manufacture of primary batteries had not begun and was not to begin until the partition was completed, the situation is analogous to that in the *Bogoratt* case and that decision is controlling authority that the plaintiff is not entitled to compensation. The language of the Louisiana court in dealing with a similar question where the employee was killed while engaged in the construction of a furnace in the defendant's oil refinery aptly summarizes our conclusion: "It is no part of the trade, business, or occupation of the manufacturing concern to erect its factory building. Its business is to operate after its erection. . . . If the princi-

pal may contract with the independent contractor for original construction [without liability to his employees under the statute], we see no reason why he may not contract for additional necessary construction, or reconstruction. . . ." *Horrell* v. *Gulf & Valley Cotton Oil Co., Inc.*, 15 La. App. 603, 607, 131 So. 709.

The Superior Court is advised that judgment be entered sustaining the defendant's appeal from the commissioner, and recommitting the case for an award in favor of the defendant. No costs will be taxed in this court to either party.

In this opinion the other judges concurred.